edy, is to make the statute an instrument of fraud and permit the commissioners to take advantage of their own wrong. The Buchanan Bridge Company was bound, in law, to know the extent of the powers of the commissioners, and did know. It is bound to know whether the commissioners were obeying the law or violating the law, and knowing that the commissioners were violating the law and dealing with them with that knowledge, it is in no position now to say that it has been taken advantage of or that there is any equity arising in its favor.

It is clear that the demurrer should be sustained and the petiiton dismissed, and such will be the judgment of the court.

W. W. Touvelle and Thomas Emery, for plaintiffs.

John Q. Files, Prosecuting Attorney, for defendants.

---

(Franklin Co., O., Common Pleas.)
IN RE PRESS-POST.

---

*Right of newspapers to report court proceedings—Abuse of such right—What will amount to contempt of Court.*

Motion for proceedings for contempt.

PUGH, J.

Passing to the oral charge that the Post-Press has been publishing matter calculated to obstruct the administraticn of justice in this case, for the purpose of determining whether a formal charge of contempt should be ordered against that newspaper, I have read all the editorials and reports published in its columns since the trial began. The inquiry could not be extended back of that period, for the contempt of law only reaches and regulates publications made during the trial of a case.

A newspaper is granted immunity from responsibility for fair, accurate and impartial reports of a trial held in open court, and for editorial comments upon the manner of administering justice therein, which are made fairly and in good faith. If the editor criticises the court or any of its officers, attorneys, witnesses or parties, unjustly or intemperately, or, if the reporter publishes a false or unfair report, during the pendency of the case, tending to prejudice the public or the jury, and tending to obstruct the administration of justice in that particular case, they make themselves liable for contempt.

It is just as pernicious and reprehensible for either the editor or reporter, by such publications, to cast unjust reflections on the conduct of witnesses, parties, counsel, jurors or judges, during the pendency of the trial, or in any other way to unlawfully seek to influence the administration of justice, when such publications are liable to be read by the jurors, as it would be for an individual to write a letter containing such reflections which would be liable to be read by the jurors. These observations are fully supported by the decisions of our Supreme Court in the State v, Myers, 46 Ohio St. 473. Indeed that court goes much farther in the statement of the law.

An editor or reporter who loves Anglo-Saxon fair play will not, in this way, invade the temple of justice even to promote and hasten punishment upon what seems to him to be a great municipal or public wrong, because such conduct is calculated to destroy that benign and humane principle which presumes that the accused are innocent till the proof establishes their guilt; and becausin tends to deprive the accused of his impree scriptible right to be tried by an unprejudiced court and an impartial jury.

In addition to the punishment for contempt, by fine or imprisonment, or both, there are four other remedies for such a transgression of the law by the press.

(1.) Trial may be deferred till the inflamed temper of the public, caused by such publications, disappears.

(2.) When the verdict is adverse to the accused, and is, in whole or in part, the product of such inflammation of the public mind, it may be set aside.

(3.) The jury may be locked up and guarded, during the trial, at public expense, to prevent such injurious publications from reaching it.

(4.) The reporter may be excluded from the court room.

From the necessarily hasty perusal and analysis of the editorials and reports in the Press-Post, published during the time mentioned, I cannot conclude that the editorials transcended the legal limits for editorial comment and criticism. Some are quite pungent, others are picturesque, but they are on the windward side of the law. There are some gneralizations in other editorials that are very censorious in character, but since they are not addressed to this case, they are not the proper subject of inquiry.

I cannot, however, reach this conclusion about the reporter's work in the issue of the 17th, inst., and especially in the head-lines. They are inflammatory in their character. If they have been read by the jurors, or if they should be read by them, as they may have been, or may be—a thing which the court cannot prevent, they would tend to prevent that calm, deliberate and impartial judgment on their part to which the defendants are entitled.

The abuses of the freedom of the press are not as dangerous as its suppression would be. The press is a necessary, important, and valuable institution in imparting information with respect to the conduct of every department of government—the judiciary as well as the legislative and executive authorities—information to which the people are entitled; but the preservation of the right of persons who are accused of crime to a fair and impartial trial is just as essential and important in our democratic system of government.

While I think the reporter's work in the issue of the 17th, inst., exceeded the limit of fair and legal reporting, still my judg-

ment is that it is not of such a magnitude that the court should pause in the trial of this case long enough to hear a contempt case based upon it.

What has been said may serve as a warning against the repetition of the encroachment upon the law, and as an admonition that if it is repeated, the court will be obliged to adopt one or more of the remedies found in the armories of the law.

---

(Lake County Common Pleas.)

## STATE v. DANIEL OWEN and JOSEPH OWEN.

---

1. That part of section 6968 which provides for the confiscation of the fish net and thereby depriving the owner of his property without service of process, or day in court, is in violation of section 16, article I of the constitution of this state.

2. That part of the section making it illegal to maintain nets within one-half mile of the mouth of any river flowing into Lake Erie, is not dependent on the confiscation provision, but can be enforced without reference to it, and is therefore valid.

3. It is not shown that the kinds of fish their habits and the conditions and restrictions required for their protection, are the same in the other bodies of water in the state, as in Lake Erie, and it is not therefore shown that it is "an act of a general nature", and therefore not shown to be in violation of section 26, article II, of the constitution of this state.

4. An indictment which does not charge all the criminating acts, which the state must prove to authorize a conviction, does not charge an offense. An omission to state all the criminating acts cannot be cured by the use of the word "unlawfully." Lamberton v. State, 11 Ohio, 282.

5. This indictment under said section charges that the defendant unlawfully maintained a certain fish net in the waters of Lake Erie within one-half mile of the mouth of Grand river, a river flowing into Lake Erie, but does not charge that it was set, opened out. or maintained in such condition that fish could be caught in it, or that it was being maintained there to catch fish; therefore it does not state all the criminating facts which the state must prove to authorize a conviction; consequently does not state an offense. 8 Ohio St. 98, opin. 115, construing sec. 10, article I of the constitution.

6. Is not the language of the provision of said section upon which this indictment was based, so meagre and general—its omissions so many—its uncertainty so great, by the careless use of language, that legislation is required to make of it a criminal statute authorizing a criminal charge such as is required by sec. 10, article I, of the constitution. Opin. Bartley, Judge, 8 Ohio St. 115.

## HOWLAND, J.

The contention in this case is over the constitutionality of section 6968, and of the sufficiency of the indictment drawn under one of the provisions of that section.

The charge in the indictment is in the words following, to-wit: That the defendants, on or about the 13th day of April, 1895, in the county of Lake and state of Ohio, did unlawfully, purposely and knowingly maintain a certain net, to-wit: "A fish net, in the waters of Lake Erie within one-half mile of the mouth of Grand river, a river flowing into Lake Erie."

To that indictment the defendants filed a demurrer, and allege for cause that the provisions of section 6968 are unconstitutional. The demurrer was overruled for reasons hereinafter explained. The defendants were arraigned and plead not guilty; a jury was impaneled and sworn. The State called one B. F. Crofoot as a witness, and offered evidence by him tending to prove the charge in the indictment, when the defendants objected to any evidence under the indictment, on the ground that the indictment did not charge an offense under the laws of Ohio; and upon the further ground that the act of 1891, an amendment to section 6968, is unconstitutional and void—first, because said act is of a general nature, and has no uniform operation throughout the state; second, that said act provides for unlawful and unreasonable seizure of private property; third, that the indictment is insufficient because it does not aver that this net was maintained for catching fish.

By Court: When this indictment was before us on demurrer, the only question raised was the constitutionality of that section. We then and now hold that part of the section which provides for the confiscation of the net, is unconstitutional. It is well settled that the courts will not hold a statute unconstitutional unless it clearly appears that the legislature exceeded its constitutional limit in passing it. Where a statute provides for two or more objects, and they are independent provisions, which can be enforced independently of each other, then if it clearly appears that one or more of its provisions are prohibited by the constitution, while the others are not, so much of the act only as can be enforced without violating the constitution will be held valid.

Exchange Bank v. Hine, 3 Ohio St. 1; Railroad v. Commissioners, 31 Ohio St. 338; The State ex rel. v. Dombaugh, 20 Ohio St. 167; The City of Piqua v. Zimmerlin, 35 Ohio St. 507; Gager v. Prout, 48 Ohio St. 89; Cooley, Con. Lim., 178.

The legislature has the power to legislate for the protection of fish in the lakes and rivers of the State. It is provided in this act what will be illegal in catching fish and deemed unnecessarily injurious to the propagation of fish by providing that nets shall not be set, placed or maintained within one-half mile of the mouth of any river flowing into Lake Erie and by providing a